*1200 OPINION.
MttRdock :
The first question is, Did the petitioner realize a gain from the liquidation or partial liquidation of Doric in 1924, and, if so, how much was his gain? He reported no gain of that kind. *1201 The Commissioner added $44,331.25 to his income as a gain from the liquidation of Doric. He computed this gain by assigning to the Matz notes a value of 85 per cent of their face value and by holding that the petitioner was the owner of 500% shares of the Doric stock at the time of the distributions. The value of the Matz notes at that time was only 60 percent of their face value. Doric Apartment Co., 32 B. T. A. 1187, a case heard with the present case and others. The petitioner owned only 50% shares of the Doric stock at the time of the distributions in question. This finding is required not only by the uncontradicted testimony of several witnesses, but by the respondent’s Exhibit D. That exhibit was offered and admitted in evidence without qualification. It shows that the petitioner “ owned ” 50% shares and the remaining shares were all “ owned ” by others.
The petitioner received as his own Matz notes of the face value of $7,812.50. He claims that he purchased them and therefore the Commissioner erred in treating the receipt of them by him as a liquidating dividend from Doric. However, the evidence does not support this contention of the petitioner. The record contains many contradictions on this point. It clearly shows that none of the Doric stockholders bought, or paid anything for, the notes which they received and that they received all of the Matz notes in exact proportion to their respective stockholdings in Doric. Doric did not transfer the notes directly to its stockholders. It transferred series 1 and 2 to Joseph & Joseph, series 3 to Stitzel Distilling Co. and series 4 to H. H. Newmark Co. These transferees held the notes in trust for the Doric stockholders and almost immediately transferred the notes to the Doric stockholders without receiving any consideration directly from those persons. Joseph & Joseph, the Stitzel Distilling Co., and the H. II. Newmark Co. gave certain checks to Doric at the time they received the Matz notes from Doric. However, the cash distributions from Doric apparently were used to repay to Joseph & Joseph, the Stitzel Distilling Co., and the H. H. Newmark Co. the amount each had advanced to Doric in the checks referred to above. But even if the circumstance of these checks is not entirely consistent with the theory upon which the Commissioner has determined the deficiency, it is not sufficient, when taken with all of the other evidence, to entitle the petitioner to judgment upon this point, The amount of the checks was only one half of the fair market value of the notes. The Commissioner has deducted the amount of the checks from the liquidating distributions. He concedes that that amount should be deducted in computing the amount of the liquidating distributions so that the stockholders will only be taxed on the excess of the sum of the cash and value of the notes over the sum of *1202 the basis and the amount put back into Doric through the checks. The stockholders of Doric did not acquire the notes in proportion to or because of their interests in the makers of the checks. They did not acquire the notes as gifts. They did acquire them as stockholders of Doric indirectly from Doric. The net amount received exceeded the basis. Therefore the Commissioner did not err in taxing the petitioner with gain from the partial liquidation of Doric. Sec. 201 (c) and (g), Revenue Act of 1924. He did err in computing the amount of that gain. The basis of the Doric stock for gain or loss to the petitioner is not in dispute and therefore the parties can compute the correct gain in accordance with this opinion.
The Commissioner erred in taxing the petitioner in 1924, 1925, 1926, and 1928 upon interest and gains on the Matz notes which belonged to his wife and the Fuhrmans. Another question is whether the petitioner continued to own the Matz notes of the face value of $7,812.50 which he received as his own. He claims that in 1924 he gave these notes to his wife. He likewise claims that in 1924, 1925, and 1926 he gave other securities, consisting of stocks, bonds, and notes, to his wife and the Commissioner erred in taxing him upon the interest and dividends from those securities. There is no dispute about the amounts involved. The only question is whether the petitioner has shown that he made the alleged gifts. A number of the essential elements of a bona fide gift have been established. Cf. Adolph Weil, 31 B. T. A. 899. Yet two of the essential elements of a completed gift are not satisfactorily established. The evidence does not show (1) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, in praesenti, and (2) an irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor could exercise no further act of dominion or control over it. Cf. Jackson v. Commissioner, 64 Fed. (2d) 359. The Board said in Theodore C. Jackson et al., Administrators, 32 B. T. A. 470:
The transfer and delivery, of property, including corporate stock, are not conclusive upon the question of intent where change of title is involved from the standpoint of taxation; and surrounding circumstances, including subsequent acts of the taxpayer, often establish intent more clearly than parole evidence.
In the case of the stock certificates formal assignments were made on separate pieces of paper. Apparently this was done for the purpose of enabling the petitioner to detach the separate assignments and destroy them whenever he desired to sell any of the stock or place it as collateral for his own borrowings. He thus was able to use the stock as his own after the dates of the alleged *1203 gifts. He actually did use the certificates for his own purposes without consulting his wife. Cf. P. B. Fouke, 2 B. T. A. 219. She said that she knew nothing about the actual transactions hut left all of such affairs to her husband. She could remember no details but expressed confidence in her husband and said he had her permission to use the securities as he saw fit. The fact that he had access to the box in which they were kept might not be particularly important were it not for the added fact that he removed them at will. Cf. Jackson v. Commissioner, supra; Marshall v. Commissioner, 57 Fed. (2d) 633; certiorari denied, 282 U. S. 61; Richard Tuffli, 13 B. T. A. 1255. He also sold some of the securities and reported the gain or loss in his own return. He likewise reported the dividends on the stock for 1926 while he had it up as collateral on his borrowings. The stock was never transferred to his wife’s name on the books of the various corporations until after the Commissioner had raised a question about the alleged gifts. Cf. Marshall v. Commissioner, supra. The notes were never endorsed by the petitioner. Some of them could be negotiated only by his endorsement. See sec. 3720 b-30, Carroll’s Kentucky Statutes 1930. The dividends were paid to and received by the petitioner. He also received the interest and all proceeds from sales. He claims that he did not receive such funds for his own benefit, but the evidence is far from convincing on that point. His wife had a separate bank account, but none of the money was deposited in that account. Some of the money was deposited in the petitioner’s account. The wife had power to draw on that account, but she never exercised her power. He said he purchased additional securities for his wife from the income and proceeds which he received. But he kept no records and could show no specific instances of such use of the funds. Although the securities were worth many thousands of dollars, yet the record does not show one instance where she received income or proceeds from them. The implication from all of the evidence is that the petitioner used the income and proceeds for his own purposes.
Although the forms executed and the acts done by the petitioner at the dates of the alleged gifts would ordinarily show that gifts had been made, nevertheless subsequent acts of the petitioner indicate that he did not actually divest himself of title, dominion, and control so as to relieve himself from tax on the securities. The parties make no point of the difference between the facts relating to the stock and the facts relating to the notes and bonds. The Commissioner has held that the petitioner did not make present gifts of any of the securities in 1924, 1925, and 1926 and the income and *1204 profits were his during those years and during 1928. The evidence fails to show a valid gift of any of the securities. The interest and dividends for the four years were properly included in the income of the petitioner.
The petitioner is taxable in 1928 on interest and gains upon any of the original $7,812.50 face value of the Matz notes which drew interest or were paid in that year. His profit was the excess of the amount received on a note, exclusive of interest, over 60 percent of its face value.
The petitioner was not entitled to a deduction for 1928 representing accrued interest on the amount which he owed the Fuhrmans. He kept no complete books. He was not entitled to use an accrual method in reporting his income. He paid no interest to the Fuhr-mans in 1928 on the balance which he then owed them. The Commissioner correctly disallowed that deduction on the ground that the petitioner was on a cash basis.
The remaining issue is whether any part of the deficiency for one or more of the years 1924, 1925, 1926, and 1928 was due to fraud with intent to evade tax. Sec. 275 (b), Revenue Acts of 1924 and 1926; sec. 293 (b), Revenue Act of 1928. The burden of proof upon this issue is by statute placed upon the Commissioner. Sec. 601, Revenue Act of 1928, amending sec. 907 (a), Revenue Act of 1924, as amended by sec. 1000, Revenue Act of 1926.
The Commissioner in his brief urges that the petitioner’s failure to report his full share of the income of the partnership of Joseph & Joseph for each year indicates fraud. The Commissioner introduced no evidence in respect to those items. The notices of deficiencies show that the Commissioner increased the petitioner’s share of the partnership income for each year, but they completely fail to show that the failure of the petitioner to return the proper amount was done with fraudulent intent, or even knowingly. Cf. American Ideal Cleaning Co., 30 B. T. A. 529; Henry S. Kerbaugh, 29 B. T. A. 1014. The petitioner did not contest the adjustments. of partnership income, but he certainly did not admit fraud thereby. Failure to contest an adjustment made in determining the deficiency is not proof of fraud. The Commissioner can not sustain his burden of proof on a fraud issue by statements made in his notice of deficiency. James Nicholson, 32 B. T. A. 977. Those items must be disregarded in so far as the fraud issue is concerned.
The above items and also the Fuhrman interest item for 1928 ($1,698.85 claimed as a deduction) were not properly pleaded by the Commissioner as facts upon which he relied to support the fraud issue. The only reference to them in the answers is in the references *1205 therein to the notices of deficiencies. This did not properly notify the petitioner and the Board that the Commissioner relied upon those items to show fraud. Furthermore, the answer for 1928 affirmatively indicates that the Commissioner relies upon the failure of the petitioner to report certain income, rather than upon any unwarranted deduction taken. The facts showing fraud should not only be proven, but they should be clearly pleaded. The items mentioned in this paragraph will be disregarded in so far as the fraud issue is concerned. See Bules 14 and 15; L. Schepp Co., 25 B. T. A. 419, 438; American Ideal Cleaning Co., supra.
The petitioner’s failure to report interest and gain on the Matz notes and Doric stock which actually belonged to his wife and the Fuhrmans is, of course, no evidence of fraud. The fact that the Matz notes were valued at only 3i0 percent of their face value instead of being valued higher does not evidence fraud under the circumstances. Doric Apartment Co., supra.
There remain for consideration the circumstances surrounding the failure of the petitioner to report for 1924, 1925, and 1926 the interest and dividends upon the securities which he alleges he gave to his wife (including $7,812.50 face value of the Matz notes), his inconsistency in reporting gains and loss from the sale of some of those securities, his failure to report any profit in 1928 on his share of the Matz notes, and his failure to report a profit of $2,971 on the sale of Kansas City Southern stock in 1928. The latter item was reported on his wife’s return. The petitioner made up that return. He testified that he had made a mistake in reporting that profit in the way he did and that he could not account for the mistake. This omission indicates negligence, but, standing alone, is not a sufficient basis for imposing the fraud penalty. His failure to report a profit for 1928 on the Matz notes is like his failure to report the interest and dividends on the whole lot of securities involved in the alleged gifts and need not be discussed separately. The respondent contends that the alleged gifts were mere shams, planned to mislead the Commissioner as to the ownership of the securities and thus to evade tax lawfully due from the petitioner on the income from those securities. We have already held that the petitioner has failed to establish the fact that actual gifts were made. But the question now is, Does the evidence affirmatively show that the alleged gifts were shams designed to evade tax? Doubts and omissions are now to be held against the Commissioner, upon whom rests the burden of proof. The evidence is not clear and convincing on this point and the petitioner must receive the benefit of the doubt. It is not clear that the petitioner used the income and proceeds from the *1206 securities for his own benefit after the dates of the alleged gifts. The obvious errors which he committed in his returns may have been due to carelessness rather than to a deliberate intent to evade tax. While at times his errors tended to reduce his tax, at others he included in his return items which, had he been consistent, he would have omitted. His very inconsistency and indifference to the result indicate negligence and carelessness rather than fraudulent intent. The proof is not clear and convincing that a part of any deficiency was due to fraud with intent to evade tax.
The respondent contends in the alternative that a part of the defi.ciency for 1928 was due to negligence or intentional disregard of rules and regulations but without intent to defraud, and, therefore, the penalty provided in section 298 (a) of the Eevenue Act of 1928 should be imposed. He made no such claim in the proceeding relating to the other years. The petitioner was negligent in failing to include in his return the profit upon the sale of the Kansas City Southern stock.

Decision will be entered umder Bule 50.